IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

TINA DEAN,                                    *
                                              *
            Plaintiff,                        *
                                              *          Civil No. TMD 13-1238
v.                                            *
                                              *
                                              *
CAROLYN W. COLVIN,                            *
Acting Commissioner of Social Security,       *
                                              *
            Defendant.                        *

          ************

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Tina Dean ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3)

of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner")

denying her applications for disability insurance benefits ("DIB") and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act.   Before the Court are

Plaintiff's Motion for Summary Judgment (ECF No. 22) and Defendant's Motion for Summary

Judgment (ECF No. 24).[1]   Plaintiff contends that the administrative record does not contain

substantial evidence to support the Commissioner's decision that she is not disabled.   No hearing

is necessary.   L.R. 105.6.   For the reasons that follow, Defendant's Motion for Summary

Judgment (ECF No. 24) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 22)

is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).   For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable."   *Id.*

# I

## Background

Plaintiff was born in 1973, has a GED, and previously worked as a teacher's assistant.  R. at 27, 42-43, 158.  Plaintiff applied for DIB and SSI on October 9, 2008, alleging disability beginning on May 2, 2007, due to fibromyalgia, tachycardia, osteoarthritis, spinal stenosis, irritable bowel syndrome, migraines, dysthymia, and bipolar disorder.  R. at 17, 137.  The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 71-88.  On June 28, 2011, ALJ G.B. Arthur held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 17, 38-70.  On December 28, 2011, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability of May 2, 2007.  R. at 14-34.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on February 22, 2013.  R. at 1-4, 12.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 26, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A.    Nichole Brown, CRNP (Wildewood Medical Care)

The ALJ noted in his decision:

On April 26, 2007, [Plaintiff] participated in a medical evaluation, which was performed by Nichole L. Brown, a certified registered nurse practitioner. Nurse Brown [an "other source"] noted that [Plaintiff] has been diagnosed with migraines, fibromyalgia, tachycardia, overactive bladder and irritable bowel syndrome. According to nurse Brown's findings, [Plaintiff] can never climb, squat and crawl. She should never be exposed to cold, heat, humidity, dust or heights. She cannot perform repetitive tasks with her hands regarding simple grasping or manipulation. Surprisingly, these restrictions are also translated by Nurse Brown into psychological restrictions in performing activities of daily [living], social functioning, concentration and repeated episodes of decompensation.

R. at 20; *see* R. at 214-17.

On February 14, 2007, Nurse Brown noted, with John Tidball's M.D., acknowledgment that [Plaintiff] was being treated for fibromyalgia, chronic migraines, GERD, irritable bowel syndrome, anxiety, depression and palpitations. It was asserted that working was difficult for [Plaintiff] due to multiple medical visits. On March 30, 2007, nurse Brown, singularly, noted that [Plaintiff] was unable to work due to fibromyalgia, severe lower back pain and balancing problems. On August 24, 2007, Nurse Brown noted again, in an unsupported non-physician opinion, that [Plaintiff] was unable to work.

R. at 20; *see* R. at 397, 403, 405.

### B.    James Nutter, Ed.D.

The ALJ noted in his decision:

On June 24, 2009, [Plaintiff] visited James Nutter Ed.D for a psychological evaluation. Dr. Nutter noted that [Plaintiff] drove to the examination. [Plaintiff] reported receiving treatment from Pathway. She noted having PTSD because her fiancé was shot by her estranged lover who she then ended up shooting. She alleged having sleep disturbance, labile affect with crying, anger episodes, and "feeling like she was in a shell[."] She said she believed that she smelled strange things, and had visual phenomena's [sic]. Yet, on evaluation, there was no evidence of irritability, aggressiveness, violence, poor impulse control, or apathy. Her sensorium and cognition were clearly adequate.

She had average intelligence without any limitation for general fund of
information[.]

R. at 21; *see* R. at 561-67.

## C.   Nalin Mathur, M.D.

The ALJ further noted in his decision that on June 24, 2009,

[Plaintiff] visited Nalin Mathur M.D., for a consultative examination.  [Plaintiff]
told Dr. Mathur that she was diagnosed with fibromyalgia at a young age and has
been living with it.  [Plaintiff] asserted she could sit no more than 20-30 minutes,
stand for no more than 20-30 minutes, walking no more than ten minutes, and
would have difficulty lifting[] and carrying any objects.  She indicated she could
bear weight only up to 5 pounds.  Yet, on examination, her cervical, thoracic and
lumbar spine was all within normal range and had good range of motion.  Her
small joints were nontender and there was no swelling or synovitis.  However, Dr.
Mathur indicated[] she [had] 18 tender points[.]

R. at 22; *see* R. at 568-73.[2]

## D.   State Agency Medical Consultants

On June 30, 2009, J. Biddison, M.D., assessed Plaintiff's physical residual functional

capacity ("RFC").  R. at 592-99.  Dr. Biddison opined that Plaintiff could (1) lift and/or carry 20

pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six

hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and

---

[2] The Seventh Circuit has noted:

[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest
importance to disability law, its symptoms are entirely subjective.  There are no
laboratory tests for the presence or severity of fibromyalgia.  The principal
symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only
symptom that discriminates between it and other diseases of a rheumatic
character—multiple tender spots, more precisely 18 fixed locations on the body
(and the rule of thumb is that the patient must have at least 11 of them to be
diagnosed as having fibromyalgia) that when pressed firmly cause the patient to
flinch.  All these symptoms are easy to fake, although few applicants for disability
benefits may yet be aware of the specific locations that if palpated will cause the
patient who really has fibromyalgia to flinch.

*Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996) (Posner, C.J.).

4

(4) perform unlimited pushing and/or pulling.  R. at 593.  Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations.  R. at 594-96.

On that same date, G. Dale, Jr., Ed.D., evaluated on a psychiatric review technique form Plaintiff's mental impairments under paragraph B of Listings 12.04 and 12.06 relating to affective disorders and anxiety-related disorders.  R. at 574-87.  Dr. Dale opined that Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration.  R. at 584.  Dr. Dale did not find evidence to establish the presence of the criteria under paragraph C of these Listings.  R. at 585.  Accordingly, Dr. Dale assessed Plaintiff's mental RFC (R. at 588-91) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (7) respond appropriately to changes in the work setting.  Plaintiff otherwise was not significantly limited.  R. at 588-89.  On February 23, 2010, however, another state agency medical consultant, C. Sarno, M.D., found insufficient evidence of a mental impairment.  R. at 617-30.

E.      **John Tidball, M.D. (Wildewood Medical Care)**

Dr. Tidball's treatment records apparently date from January 3, 2006, to April 2, 2009.

R. at 390-554.  The ALJ noted the following in his decision:

> On April 02, 2009, Dr. Tidball . . . filled out a physical capabilities examination for [Plaintiff].  Dr. Tidball noted that [Plaintiff] could only sit, stand, walk, climb, carry and reach up to one hour in an eight-hour workday.  She could never bend, squat, and be exposed to extreme cold, heat, humidity, chemicals, dusts, fumes and odors.  She could not use her hands for any repetitive motion including simple grasping, pushing and fine manipulation.  However, Dr. Tidball then undercut the same by checking never and unknown for some of those same limitations.  The heaviest [Plaintiff] could lift was ten pounds and Dr. Tidball indicated in his judgment [Plaintiff] was prevented from working[.]

R. at 21; *see* R. at 406-10.

> On March 18, 2010, [Plaintiff] underwent another physical capacity examination performed by Dr. Tidball.  Dr. Tidball noted that [Plaintiff] could never climb, carry, bend, or crawl.  She could never be exposed to environmental hazards but she could occasionally grasp, push and perform fine manipulation . . . .

R. at 22; *see* R. at 634-37.

F.      **Francis Fishburne, Ph.D.**

Plaintiff submitted to a psychological consultative examination by Dr. Fishburne on

August 29, 2011.  R. at 870-74.  The ALJ noted the following findings:

> Dr. Fishburne noted that [Plaintiff] lived with two children, ages 9 and 18.  She had a past history of overdosing on prescription drugs.  In an average day, she gets her children off to school, does some household chores, surfs the net, plays on the computer and reads.  She can sit and stand but is precluded from sitting/standing for prolonged periods and needs to be able to change position.  She says she sometimes falls.  She does her own shopping and cooking.  She is interested in reading and does so daily.  She has two favorite television shows that she watches daily.  In Dr. Fishburne's opinion, the medical records are limited to mental status exam on June 04, 2009 by Dr. Nutter with no diagnosis.  Her full scale IQ was 110 indicating a high average range and she was able to tolerate a one-hour evaluation without any difficulty.  She was diagnosed with PTSD, depression and given a global assessment functioning score of 75.  She was not precluded from working.

R. at 22-23 (citation omitted).[3]

**G.      Hearing Testimony**

**1.      Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's testimony:

> [Plaintiff] alleges that her combined physical and mental impairments limit her ability to function properly in a work setting or perform activities of daily living. She alleges that her impairments restrict her ability to sit, stand, walk, bend, lift, carry, and perform other postural limitations, as well as affect her ability to concentrate, focus, remember and recall her memory, and complete tasks.

R. at 19-20.

The ALJ further noted:

> [Plaintiff] lives with her two children.  She gets them ready for school and cooks for them.  She does household chores and manages to go grocery shopping.  In activity reports that are part of the record she indicated that she was able to do a broad range of activities, dust, vacuum, clean, handle a checking and savings account, count change, pay bills if she had the money to do so, use a computer, follow written and oral instructions adequately, etc.

R. at 23-24.

> The evidence of record demonstrates that [Plaintiff] sits around the house, watching television, reading, and surfing the internet.  [Plaintiff] goes grocery shopping.   In activity statements[] that are part of the evidence of record, [Plaintiff] herself has admitted that she was able to interact with others.   She demonstrated no problems in interacting with others at the hearing that she did not know or in understanding and responding to questions posed by the undersigned [ALJ] or her attorney.

R. at 24; *see* R. at 42-43, 46-66.

---

[3]  The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000).  A GAF rating between 71 and 80 indicates the presence of symptoms that are transient and expectable reactions to psychosocial stressors and that cause no more than slight impairment in social, occupational, or school functioning.  *Id.* at 34.  The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

2.      **VE Testimony**

According to the VE, Plaintiff's past work as a teacher's assistant or daycare worker is semi-skilled and medium[4] as she performed it.  R. at 45.  In response to a series of questions regarding a hypothetical individual with Plaintiff's same age, education, and work experience who had various limitations, the VE testified that light jobs available to such a person included non-postal mail clerk, officer helper, and router.  R. at 67-69.[5]  Available sedentary jobs included addresser, final assembler, and order clerk.  R. at 69.[6]  No jobs would be available to someone with above moderate limitations in performing activities within a schedule, maintaining regular attendance, completing a normal workday and workweek without an unreasonable length and number of rest periods, accepting instructions, responding appropriately to criticism from supervisors, and interacting and getting along with co-workers and peers.  R. at 68-70.

The Court reviews other portions of the record more fully in its discussion of Plaintiff's arguments below.  *See infra* Part VI.

### III

### Summary of ALJ's Decision

On December 28, 2011, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of May 2, 2007; and (2) had an

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a).

impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a non-postal mail clerk, officer helper, or router. R. at 19-28. The ALJ accordingly found that she was not disabled from May 2, 2007, through the date of the decision. R. at 28.

In so finding, the ALJ found that Plaintiff had the RFC

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] retains the ability to occasionally climb stairs and ramps, to balance, to stoop and to crouch, but does not retain the ability to perform work involving kneeling or crawling. She requires low stress work (work requiring no more than moderate attention, concentration, persistence and pace for prolonged periods). She experiences moderate pain and fatigue. She must avoid concentrated exposure to vibration, excessive dust, fumes, chemicals, humidity and wetness. She is precluded from work requiring the use of push/pull controls with the legs. She must not lift/carry above shoulder height. She requires the option to alternate between sitting and standing such that no more than half an hour is required to either sit or stand at any one time. She has moderate limitations as to performing activities within a schedule and maintaining regular attendance for reliability purposes, and being punctual within customary tolerances and as to completing a normal workday or workweek without an unreasonable length and number of rest periods. She has moderate limitations as to accepting instructions and responding appropriately to criticism from supervisors and interacting and getting along with co-workers and peers.

R. at 24-25.

The ALJ found that Plaintiff's severe impairments included migraines, fibromyalgia, post-traumatic stress disorder, and degenerative disc disease. R. at 19. In considering the severity of Plaintiff's mental impairments, the ALJ found that she had mild restriction in activities of daily living; moderate difficulties in social functioning; mild difficulties regarding concentration, persistence, or pace; and experienced no episodes of decompensation of extended

duration.  R. at 23-24.  Because the criteria of paragraphs B and C of 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04 ("Listing 12.04") were not satisfied, the ALJ found that Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04.  R. at 23-24.

Further, regarding Plaintiff's credibility, the ALJ found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment."  R. at 25.  The ALJ also weighed the opinion evidence in the record, giving (1) "little weight" to the opinions of Ms. Brown and Drs. Tidball and Mathur and (2) "great weight" to the opinions of Drs. Nutter and Fishburne.  R. at 26-27.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[7]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

---

[7] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.*  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to

differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

**VI**

**Discussion**

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[8] ("SSR") 96-8p.  Pl.'s Mem. Supp. Mot. Summ. J. 3-7, ECF No. 22-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).  Plaintiff maintains that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." *Id.* at 6.  Plaintiff's assertion is without merit.

Plaintiff first maintains that the ALJ failed to set forth a narrative discussion under SSR 96-8p, contending that the ALJ did not explain the evidence upon which he relied to support his RFC assessment, citing *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006).  However, "SSR 96-8p only requires *consideration* of all [seven functional] factors [relating to sitting, standing, walking, lifting, carrying, pushing, and pulling], not *enumeration* of all the factors." *Banks v. Astrue*, 537 F. Supp. 2d 75, 84 (D.D.C. 2008).  SSR 96-8p "does not require written articulation of all seven strength demands." *Id.* at 85.  Accordingly, "a written function-by-function analysis is not required." *Id.*; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.

---

[8] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

14

2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." (citing SSR 96-8p)).

In this case, the ALJ discussed in narrative form the records and opinions of Plaintiff's examining sources. R. at 20-23. The ALJ also considered Plaintiff's testimony and credibility when determining her RFC. R. at 25-26. Thus, the ALJ's function-by-function assessment and narrative discussion were proper. *See Brown v. Astrue*, Civil Action No. TMD 09-1358, 2011 WL 3047635, at *2 (D. Md. July 22, 2011); *Walter v. Astrue*, Civil No. JKS 08-639, 2009 WL 2584817, at *4 (D. Md. Aug. 19, 2009) (concluding that ALJ's "function by function" assessment was adequate because ALJ evaluated medical facts and opinions, as well as claimant's testimony and credibility, in narrative discussion). In any event, Plaintiff does not dispute either the weight given by the ALJ to the various opinions or the ALJ's personal observation of Plaintiff at the hearing and consideration of her activities of daily living in discounting her credibility. *See Johnson*, 434 F.3d at 658; *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Accordingly, Plaintiff's assertion is unavailing.

Plaintiff next maintains that the ALJ failed to address her diagnosed anaphylaxis or hives. Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 22-1.

> While the Commissioner's decision must contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]

*Reid v. Comm'r of Soc. Sec.*, No. 13-1480, 2014 WL 2958800, at *3 (4th Cir. July 2, 2014) (citation omitted) (internal quotation marks omitted).   Moreover, the burden is on the party attacking an agency's determination to show that prejudice resulted from the error.   *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964))).   Furthermore, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."   *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").   Rather, "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time."   *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.); *see Bautista v. Astrue*, Civil No. TJS-11-1651, 2013 WL 664999, at *6 (D. Md. Feb. 22, 2013).

In this case, although Plaintiff points out the recurring mention of her anaphylaxis in the record, she fails to allege any limitation resulting from the condition that would affect her ability to work.   She did not claim in her applications that her anaphylaxis limited her ability to work.

R. at 137.  She did not allege so at the hearing (R. at 40-66), although she did testify that she had

an EpiPen.  R. at 50-51.  An ALJ is not obliged to investigate a claim not presented at the time of

the benefits application and not offered at the hearing as a basis for disability.  *Meyer v. Colvin*,

754 F.3d 251, 256-57 (4th Cir. 2014) (citing *Halverson v. Astrue*, 600 F.3d 922, 934 (8th Cir.

2010)).   Furthermore, Plaintiff does not dispute the "little weight" given by the ALJ to Dr.

Tidball's opinion (R. at 406-10, 634-37) because it was inconsistent with Plaintiff's reported

activities of daily living (R. at 26-27).  *See id.* at 256 ("[A] treating physician's opinion is to be

accorded comparatively less weight if it is based on the physician's limited knowledge of the

applicant's condition or conflicts with the weight of the evidence." (citing *Craig*, 76 F.3d at 590;

20 C.F.R. § 404.1527(c))).   Further, on March 18, 2010, Dr. Tidball opined that Plaintiff's

anaphylaxis "precludes employment."  R. at 637.  As the Commissioner points out, this opinion

is not entitled to any special significance because it is not a medical opinion but an opinion on an

issue reserved to the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Moreover, this

opinion was inconsistent with Dr. Tidball's finding on April 2, 2009, that Plaintiff's allergy

"causes blisters on [her] skin."  R. at 407.  In any event, the ALJ incorporated into his RFC

assessment Dr. Tidball's opinion that Plaintiff's allergies precluded her working in the presence

of chemicals, dust, and fumes.  R. at 24-25, 635.  Plaintiff's assertion regarding the ALJ's failure

to address her anaphylaxis thus is unavailing.

Plaintiff finally contends that the ALJ's RFC assessment "fails to address or account for

the frequency and duration of [her] migraine headaches," which the ALJ found were a severe

impairment at step two of the sequential evaluation process.  Pl.'s Mem. Supp. Mot. Summ. J. 8-

9, ECF No. 22-1.  As noted in Part IV above, the Commissioner determines at step two of the

five-step sequential evaluation process whether the claimant has a medically severe impairment

or combination of impairments. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98); *see Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (per curiam) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement."). Accordingly, "[t]he findings that the ALJ must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012). "At step four, on the other hand, the ALJ must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Id.* "It is possible, therefore, for an ALJ to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.*; *see Walker v. Colvin*, No. C13-3021-MWB, 2014 WL 1348016, at *7 (N.D. Iowa Apr. 3, 2014) ("A finding of a severe impairment at Step Two does not require the ALJ to provide related functional limitations at Step Four.").

As the Commissioner points out, the ALJ discounted Plaintiff's credibility regarding her subjective complaints because the ALJ found that her limitations were not as limiting as she alleged. R. at 25-26. Plaintiff does not dispute the ALJ's finding that "[t]he available medical evidence of record supports the fact that it was thought that with better compliance of prescribed medications that her headache pain would significantly improve" (R. at 20). *See* 20 C.F.R. §§ 404.1530, 416.930. She also does not dispute the ALJ's finding that she "believes her migraines are unbearable with trembling and numbness; yet, the record notes poor compliance

18

with medication and no objective finding of numbness or trembling." R. at 26. Plaintiff's argument regarding her migraine headaches is, therefore, without merit as well.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards in this case. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 24) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 22) is **DENIED**. The Commissioner's decision is **AFFIRMED**. All other pending motions are **DENIED AS MOOT**. A separate order shall issue.

Date: August 20, 2014                                          _____/s/_____
                                                               Thomas M. DiGirolamo
                                                               United States Magistrate Judge